**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEVIN BONETT**<br>219 7th Street<br>Lindenhurst, New York 11757<br>*Resident of Suffolk County*<br><br>Plaintiff,<br><br>***Individually and on Behalf of All***<br>***Similarly Situated Employees***<br><br>v.<br><br>**SHAWMUT WOODWORKING &**<br>**SUPPLY, INC.**<br>3 East 54th Street, 10th Floor<br>New York, New York 10022<br><br>d/b/a: Shawmut Design & Construction<br>    3 East 54th Street, 10th Floor<br>    New York, New York 10022<br><br>Serve:  C T Corporation System<br>      28 Liberty St.<br>      New York, New York 10005<br><br>Defendant. | Civil Action No.:<br><br><br><br>Collective/Class Action<br><br><br><br>Jury Trial Requested |

**COLLECTIVE ACTION COMPLAINT FOR WAGES OWED**

Kevin Bonett, ("Plaintiff"), on behalf of himself and all other similarly situated employees,

by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits

his Complaint against Shawmut Woodworking & Supply, Inc, d/b/a "Shawmut Design and

Construction" ("Defendant"), to recover unpaid wages, liquidated damages, interest, reasonable

attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as

amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under the New York Minimum Wage Act, Labor Law § 650, *et seq*. and the New York Wage Payment Act, Labor Law § 190, *et seq*., (collectively, the "NYLL"); and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from a common scheme devised by Defendant to avoid paying Plaintiff and others similarly situated their wages owed. As described herein, Shawmut Design and Construction ("Defendant") is a nationwide construction management company with offices across the country. Defendant provides management and design services on behalf of various clients. Defendant's clients include luxury home builders, sports venues, commercial offices and academic facilities.

Defendant employs a variety of construction management professionals to assist with the creative aspects of its business. These professionals hold the title of Project Manager, Superintendent and Estimator. They are responsible for collaborating with Defendant's clients to assist with developing their building projects. Creating project agendas, overseeing laborers and managing a project's budget are the key tasks that construction management professionals perform. They are in charge of achieving the financial goals surrounding a client's construction project and developing the logistical strategies that are key to a project's success.

The three (3) main components of Defendant's construction business consist of project management, site supervision and estimating. Defendant's construction management professionals are in charge of these components. A Project Manager, Superintendent and Estimator are staffed at each of Defendant's clients' job sites at all times.

To build its workforce of construction management professionals, Defendant recruits college students who are close to graduating to join its Construction Management Skills Training ("CMST") program. The program is for a period of thirty-six (36) months and its focus is on-the-job training. The program is separated into three (3) distinct twelve (12) month installments, in which each participant spends twelve (12) months working as an Assistant Project Manager, twelve (12) months working as an Assistant Superintendent and twelve (12) months working as an Assistant Estimator (collectively, "Assistant(s)). During the program, the CMST participant must shadow one of Defendant's on-site construction management professionals; Assistant Project Managers shadow Project Managers, Assistant Superintendents shadow Superintendents and Assistant Estimators must follow Estimators.

Regardless of which Assistant position that a CMST participant is assigned to, for the first year of the program, Defendant classifies its CMST participants as non-exempt employees who are eligible to receive overtime wages. However, for the last twenty-four (24) months of the program, regardless of which position a CMST participant holds, Defendant classifies those participants as exempt employees who are not eligible to receive overtime wages.

Regardless of whether a CMST participant was eligible or not eligible to receive overtime wages, the duties they performed were all the same. Their daily tasks centered on providing routine office support. Their responsibilities were non-managerial in nature and did not involve the use of discretion. They simply completed the basic tasks that were assigned to them by their construction management professional. Their duties were secretarial in nature and centered on routine office tasks. Producing documents and data entry were common examples of these tasks. Plaintiff and other Assistants did not have supervisory authority, nor did they utilize independent judgment. They simply had to follow the directions they were given.

While in the CMST program, Plaintiff and other Assistants consistently worked over forty (40) hours per week. They regularly worked fifty (50) to sixty (60) hours each week. There were times when they worked even more. Their heavy workload required them to work overtime.

Despite regularly working overtime, Plaintiff and other Assistants were not paid overtime wages. They failed to receive "time and a half" (1.5) their regular rates of pay for all hours worked over forty (40) each week.

Defendant did not allow its non-exempt Assistants to record all of their overtime hours. Defendant also misclassified its other Assistants as exempt employees to evade paying them overtime wages. Through this unlawful scheme, Defendant willfully and intentionally deprived CMST participants of the overtime wages they are owed. The tasks performed by Plaintiff and other Assistants did not exempt them from the overtime requirements. Their tasks were always Supervised by a Project Manager, Superintendent, Estimator or another higher-ranking employee. They never had the authority to act on their own.

## THE PARTIES

1.      Plaintiff Kevin Bonett (hereinafter, "Bonett") is an adult resident of Suffolk County, New York.

2.      Defendant Shawmut Woodworking & Supply, Inc., d/b/a Shawmut Design and Construction (hereinafter, "Defendant"), is an incorporated for-profit business registered and headquartered in Boston, Massachusetts. Defendant is also registered to do business in New York and has an office at 3 East 54th Street, 10th Floor, New York, New York 10022.

3.      Defendant's business centers on providing construction management and design services to clients across the United States.

4.      Due to the nature of its business, Defendant is subject to the FLSA and the NYLL.

5. Due to the amount in revenues generated, Defendant is subject to the FLSA and the NYLL; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

6. Plaintiff worked for Defendant who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d) and the NYLL § 190.

7. Starting in June of 2015, Plaintiff Bonett was enrolled in Defendant's CMST program. Bonett was informed that the program would last three (3) years.

8. During that time, Defendant informed Bonett that he would work in three (3) different job positions, each lasting approximately twelve (12) months.

9. From approximately June 2015 until August 2016, Plaintiff Bonett was employed by Defendant as an Assistant Project Manager. For this period of his employment, Defendant classified Bonett as a "non-exempt" overtime eligible employee.

10. From approximately August 2016 until October 2017, Plaintiff Bonett was employed by Defendant as an Assistant Superintendent. For this period of his employment, Defendant classified Bonett as a "exempt" employee who was not eligible to receive overtime.

11. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce based on the duties he performed for Defendant.

12. The duties assigned to Plaintiff and other CMST participants do not satisfy the duties tests contained within any FLSA or NYLL exemptions.

13. At all times relevant to this Complaint, Defendant had the authority to control Plaintiff's tasks and the tasks of other CMST employees.

14.     Defendant retained and exercised the power to change the course of Plaintiff's and other similarly situated employees' duties.

15.     Defendant controlled the administration of its business and set employee schedules, including those of Plaintiff and others similarly situated.

16.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiff and other similarly situated employees.

17.     Defendant exercised the authority to determine the hours worked by Plaintiff and other CMST participants.

18.     Defendant made all decisions relating to Plaintiff's and other CMST participants' rates and methods of pay.

19.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and others similarly situated.

20.     Plaintiff and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

21.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

22.     Discretionary supplemental jurisdiction of Plaintiff's state law claims are provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from the common nucleus of operative facts on which Plaintiff's federal claims are based.

23.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially

predominate the claims over which this Honorable Court has original jurisdiction and (iii) no circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

24.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred within the state of New York. Defendant employs numerous residents of New York, which includes members of the proposed collective class. A substantial part of the events or omissions giving rise to the claims also occurred in New York.

25.     This Honorable Court has personal jurisdiction over Defendant; Defendant is a corporation registered to do business in the state of New York and conducts sufficient business within the forum state so as to constitute a submission to its laws.

**FACTUAL ALLEGATIONS FOR ALL CLAIMS**

26.     Defendant provides construction management and design services to clients across the country. Defendant's clients range from luxury homes builders and retail establishments to sports venues and academic facilities. Defendant offers a variety of services to assist its clients with the construction of their building projects.

27.     Defendant employs construction management professionals to assist clients with developing their projects. Project Managers, Superintendents and Estimators are the titles of these professionals.

28.     Project Managers, Superintendents and Estimators are charged with the design components of each project. These high-level employees are responsible for all major decisions in regard to a project's implementation and supervising operations in the field. They are the ones responsible for directly working with Defendant's clients in order to implement their vision. This is accomplished through managing all creative elements of a project from start to finish.

29.     To facilitate its workforce of Project Managers, Superintendents and Estimators, Defendant created the CMST program. Defendant recruits soon to be college graduates, or recent college graduates, to participate in the three (3) year program. All participants of the program are Defendant's employees and are given the title of Assistant Project Manager, Assistant Superintendent or Assistant Estimator (collectively, "Assistant(s)").

30.     In each Assistant role, the CMST participants ("trainees") shadow Defendant's veteran Project Managers, Superintendents and Estimators, with each Assistant position lasting twelve (12) months. At the end of the twelve (12) months, the trainees rotate to a new Assistant role. There is no set order to the CMST rotation; any trainee could end up in any role first.

31.     At the end of the three (3) years, the CMST trainees graduate from the program and are given the opportunity to move permanently to one of Defendant's Project Manager, Superintendent, Estimator or a similar construction management position.

32.     Plaintiff and all members of the putative class are or were participants of the CMST program and worked in some or all of the Assistant roles during the relevant period.

33.     Plaintiff's and other Assistants' duties were non-managerial in nature. They lacked discretion or the ability to act on their own. Regardless of where they were in their rotation, they were under the direct supervision of a Project Manager, Superintendent or Estimator. Their tasks were closely monitored at all times.

34.     Plaintiff's and other Assistants' tasks centered on routine clerical work. They had to complete menial tasks in order to assist their assigned senior employee in any way necessary. This could range from data entry, copying and faxing documents, as well as getting coffee.

35.     Plaintiff's and other Assistants' duties also included having to regularly communicate with the subcontractors who were hired to work on a client's building projects. They acted as liaisons between Defendant's construction management professionals and subcontractors.

36.     Defendant's construction management professionals would regularly direct Plaintiff and other Assistants to gather information from the subcontractors assigned to work on a client's project. This required Plaintiff and other Assistants to have to regularly track down a particular worker in order to obtain the information requested. To accomplish this task, Plaintiff and other Assistants had to prepare correspondence and communicate by phone constantly throughout their day.

37.     Plaintiff's and other Assistants' workday also consisted of having to perform quality assurance. This primarily consisted of having to look over the budgets related to a client's project. Plaintiff's and other Assistants' supervisors would regularly assign them client budgets to review, which entailed having to enter data into template documents and follow other routine procedures.

38.     Plaintiff and other Assistants were also required to follow Defendant's procedures in regard to their "pricing" tasks. This consisted of having to obtain and verify the costs associated with the parts and equipment needed to complete a client's project. Plaintiff and other Assistants were directed to use the internet to verify this information. They were also instructed to review Defendant's database in order to compare the prices previously charged for similar parts and equipment.

39.     Once the correct price was determined, Plaintiff and other Assistants would have to routinely add this information to a client's budget. Basic data entry was typically utilized to perform this task. They would have to input the new information into Excel spreadsheets, which

would automatically lead the budget to be adjusted. There were specific guidelines that Assistants followed to upload the new information gathered.

40.    There were also guidelines regarding the manner in which Plaintiff and other Assistants had to report the information they collected. Discussing the information they procured was a central component of their duties. They were regularly required to discuss the data specific to a client's account at weekly meetings initiated by their supervisors. They would have to report the data they collected and logged into a client's file. Assistants could also be called on to discuss whether this information impacted a client's current budget.

41.    Plaintiff's and other Assistants' duties also included having to regularly accompany their direct supervisor to construction sites. Project Managers, Superintendents and Estimators had to constantly monitor whether a client's project was progressing as scheduled. To ensure that a project stayed on track, these construction management professionals would routinely delegate assignments to Plaintiff and other Assistants. This could consist of having Assistants review the blueprints pertaining to a project in order to verify that the information conformed with a client's directives. This would require Plaintiff and other Assistants to make phone calls and send emails to the workers who were responsible for constructing a project in accordance with a blueprint's terms. However, it was the Project Managers, Superintendents and Estimators who had the ultimate say as to whether these terms were met.

42.    Project Managers, Superintendents and Estimators had the final say regarding all substantive elements of a client's project. They regularly communicated with Defendant's clients to ensure that each component of a project was effectively carried out. They made all final decisions regarding the scope of work to be performed on each project and were in charge of all

pertinent decisions regarding a project's direction. Their primary role was to address both the creative and construction aspects of a project to ensure that Defendant's clients were satisfied.

43. Plaintiff's and other Assistants' role was to simply listen to their supervisors. They were solely responsible for completing the support-related tasks delegated by their superiors.

44. There were guidelines attributable to each task that Plaintiff and other Assistants completed. They were required to follow these guidelines at all times.

45. Plaintiff and other Assistants lacked independent judgement. They did not have the authority to act on their own; they listened to what their supervisors told them and they did as they were told.

46. Plaintiff's and other Assistants' duties did not require the use of discretion. Their daily tasks did not invoke the need for analysis. They did not write substantive reports or author analytical documents. All of their duties were basic in nature.

47. Plaintiff's and other Assistants' duties never consisted of planning the material aspects related to Defendant's clients' construction projects. They did not draft project agendas or make substantive decisions regarding the labor and equipment necessary to finish a project.

48. Plaintiff and other Assistants were not responsible for developing or implementing the artistic elements related to a project. Their positions were not for the purpose of utilizing creative skill for a project's advancement. They were simply there to assist their supervisors with the routine functions necessary for a project's progression.

49. Plaintiff and other CMST participants satisfied the requirements of their position in order to benefit Defendant and its clients.

50. From approximately June 2015 until August 2016, Plaintiff Bonett was enrolled in the CMST program. During his first rotation, he was given the title of Assistant Project Manager.

51.     While completing this rotation, Plaintiff Bonett was paid an annual salary of approximately $63,000. During this rotation, Bonett was classified as a non-exempt employee who was eligible to receive overtime. However, for the majority of this period, Bonett was not properly compensated for the overtime hours he worked.

52.     Although participants in the first rotation of the CMST program are considered overtime eligible, Defendant still required these Assistants to obtain "pre-approval" for overtime. This meant that when they reported their time worked, Plaintiff and other first year Assistants were not permitted to report more than forty (40) hours of work, even if they worked well beyond those hours. This resulted in these employees ending up with substantial unpaid overtime during their first rotation.

53.     Plaintiff Bonett did not receive any overtime pay during the first nine (9) months of his participation in the CMST rotation. However, during those nine (9) months, Bonett worked a great deal of overtime.

54.     During the summer months of July 2015 until August 2015, Bonett consistently worked from 8:00 a.m. to 8:00 p.m. Monday through Friday. Bonett also regularly worked additional hours on the weekends. Consequently, for this two (2) month period, he worked at least sixty (60) hours per week, if not more. However, for this two (2) month period, Bonett did not receive any overtime pay.

55.     That following summer, which was still during his first rotation, Plaintiff Bonett again returned to the 8:00 a.m. to 8:00 p.m. schedule. He worked this schedule from May 2016 until August 2016. Therefore, during this four (4) month period, Bonett worked at least sixty (60) hours of overtime per week. However, during this period, he only received overtime on three (3)

different occasions. For all other weeks, Bonett was not compensated for any of the overtime hours he worked.

56.      During their second and third rotations, Plaintiff and all other Assistants in the CMST program were classified as exempt and were not eligible to receive overtime wages. For instance, in approximately August 2016, Plaintiff Bonett started his second CMST rotation and held the title of Assistant Superintendent. He held this position until approximately October 2017, which was when his employment ended.

57.      During the period he worked as an Assistant Superintendent, Defendant classified Plaintiff Bonett as overtime "exempt" employee who was not entitled to overtime pay. For this period, he was paid an annual salary of approximately $63,000. He received the same bi-weekly payments regardless of the number of hours he worked each week.

58.      For the first nine (9) months of this rotation, Plaintiff Bonett would typically arrive to work at 6:30 a.m. and would not leave work until 5:00 p.m. Depending on the day, he might be able to take a lunch break, which could range for thirty (30) minutes to one (1) hour. Therefore, during these first nine (9) months, Plaintiff Bonett worked anywhere between forty-seven (47) to fifty-three (53) hours each week. However, during this nine (9) month span, because he was classified as "exempt," Defendant never compensated Bonett for the seven (7) to thirteen (13) overtime hours he worked each week.

59.      For the summer months of May 2017 to August 2017, Plaintiff Bonett again began working excessive hours. During this period, he consistently worked from 6:00 a.m. to 6:00 p.m. He would also occasionally work weekends. Consequently, during this four (4) month period, Bonett consistently worked sixty (60) hours each week. However, during this four (4) month span,

because he was classified as exempt, Defendant never compensated Bonett for the twenty (20) overtime hours he worked each week.

60.     Between September 2017 through October 2017, Bonett reverted back to his 6:30 a.m. to 5:00 p.m. schedule. Thus, during these last two (2) months, Bonett worked anywhere from forty-seven (47) to fifty-three (53) hours each week. Again, he failed to receive overtime compensation for the duration of this two (2) month period.

61.     Upon information and belief, Plaintiff Bonett's schedule and hours worked were comparable to all other Assistants in the CMST program.

62.     For the entirety of their employment, Plaintiff's and other Assistants' workload was extreme. There were multiple tasks they had to perform. They would constantly receive new assignments from their supervisors throughout their workweek.

63.     These assignments often involved having to communicate with the subcontractors who were assigned to work on a client's building project. Plaintiff and other Assistants would routinely have to relay information to their supervisors in regard to the status of a subcontractor's completion of a particular task. This required Plaintiff and other Assistants to have to prepare correspondence and make telephone calls continuously throughout their day. The volume of these communications resulted in Plaintiff and other Assistants having to work overtime regularly.

64.     The schedules pertaining to Defendant's subcontractors also contributed to Plaintiff and other Assistants having to work overtime. Defendant required its Assistants to report to a particular job site prior to a subcontractor's arrival. They were also prevented from leaving the site until a subcontractor's day ended. Plaintiff and other Assistants had to regularly stay on-site during the entire time to ensure that subcontractors were completing their assignments in accordance with a Project Manager's or a Superintendent's directions. Having to stay on-site for extended periods

to ensure that a Project Manager's or a Superintendent's duties were properly carried-out had the effect of regularly elongating Plaintiff's and other Assistants' workweek.

65.     The excessive time that Plaintiff and other Assistants spent on an actual job-site each week often caused them to fall behind on their office assignments. For instance, the tasks they performed related to verifying the price of the equipment needed to complete a construction project were often very time-consuming. The time they spent communicating with vendors and searching the databases needed to verify the appropriate prices to be charged could often span for hours. Due to the multiple hours they spent in the field, they were often prevented from completing their pricing duties until prior to when they reported to the field or after they left. These conditions caused Plaintiff and other Assistants to consistently work excessive overtime hours.

66.     The budgeting tasks that Plaintiff and other Assistants were responsible for also caused them to work overtime. These tasks were both tedious and time-consuming as a result of the voluminous amount of data entry required. This requirement forced Plaintiff and other Assistants to carry a heavy workload.

67.     The regular meetings that Plaintiff and other Assistants had to attend only added to their workload. The combination of all of their assignments resulted in overtime being integral to their employment.

68.     Defendant knew that Plaintiff and other Assistants worked overtime regularly.

69.     Defendant required, suffered and/or permitted Plaintiff and other Assistants to work these overtime hours.

70.     Defendant refused to pay its Assistants overtime wages.

71.     Because they were all paid a salary, Plaintiff and other Assistants received the same regular payments each month, regardless of the number of hours they worked each week.

72.     During their first rotation, although Plaintiff and other Assistants were eligible to receive overtime, because they were prevented from recording all of their overtime hours, they consistently failed to receive overtime wages.

73.     During their second and third rotations, Plaintiff and other Assistants were not eligible to receive overtime to begin with. Consequently, they were never compensated at a rate of "time and a half" their regular rate of pay for all hours worked over forty (40) each week.

74.     There is no bona fide dispute that Plaintiff and other Assistants are owed overtime wages.

75.     The duties performed by Plaintiff and other Assistants did not meet the criteria for any exemptions contained within the FLSA or the NYLL.

76.     In bad faith, Defendant willfully withheld the overtime wages owed to Plaintiff and other Assistants.

77.     Consequently, on behalf of themselves and all those similarly situated, Plaintiff seeks the wages to which they are entitled and other available relief through this Complaint.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

78.     Plaintiff and other similarly situated employees work or worked as Assistants in the CMST program for Defendant.

79.     The FLSA requires employers to compensate non-exempt employees such as Plaintiff and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

80.     Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

81.     Defendant suffered or permitted Plaintiff and other Assistants to work more than forty (40) hours per week.

82.     Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated.

83.     Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations. Plaintiff makes these same demands on behalf of all members of the putative collective class.

84.     Plaintiff consents to be a party plaintiff in this matter. Plaintiff's consent forms are attached to this Complaint as Exhibit 1.

85.     It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

86.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

87.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

88.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

89.     Upon information and belief, others will choose to join Plaintiff in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER NEW YORK WAGE LAWS

90.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and other employees, current and former, that worked in the CMST program for Defendant and were subject to the following practices and policies: denial of overtime wages under NYLL for hours worked over forty (40) in a single workweek.

91.    Plaintiff is a member of the proposed class he seeks to represent.

92.    The claims alleged by Plaintiff are typical of the claims of the proposed class.

93.    The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

94.    There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

95.    Counsel for the proposed class are qualified and experienced in litigating class actions and other complex litigation matters.

96.    Counsel is capable of providing adequate representation for all members of the proposed class.

97.    A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I.  Violation of the FLSA: Failure to Pay Overtime Wages

98.    Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

99.    Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a

workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

100.     As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours.

101.     Defendant willfully and intentionally failed to compensate Plaintiff for the overtime hours he worked by instructing Plaintiff to underreport his hours.

102.     By paying Plaintiff a salary, Defendant willfully and intentionally failed to compensate Plaintiff for the overtime hours he worked.

103.     There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

104.     Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

### *Count II.  Violation of NYLL: Failure to Pay Overtime Wages*

105.     Plaintiff hereby fully incorporate in this Count all allegations contained within Plaintiff's Complaint.

106.     Pursuant to New York Labor Law § 651, *et seq.*, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

107.     Furthermore, pursuant to New York Labor Law § 651 *et seq.,* an employer shall compute the wage for overtime under § 651 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

108. Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week. Defendant unlawfully failed to compensate Plaintiff for these additional hours.

109. There is no bona fide dispute that Plaintiff is owed overtime wages for the work he performed for Defendant.

110. Under NYLL, Plaintiff is entitled to additional wages from Defendant for all overtime hours he worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and others similarly situated, pray for the following relief:

a) Designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) A finding that Defendant's classification of Plaintiff and similarly situated employees as exempt was done in error;

c) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

d) Judgement against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the NYLL;

e) An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's regular hourly rate for all overtime hours worked, to Plaintiff and those similarly situated;

f) An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiff and those similarly situated;

g) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

h) Leave to add additional plaintiffs through the filing of consent forms; and

i)    All further relief deemed just and equitable by this Honorable Court.

**REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/  Benjamin L. Davis, III*
Benjamin L. Davis, III
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*